WILLIAM RODMAN & SONS, INC. *vs.* STATE TAX
COMMISSION.

Suffolk.    September 15, 1977. — November 4, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Cigarette tax, Appellate Tax Board.

A licensed cigarette wholesaler and stamper was not liable under G. L.
c. 64C, § 6, for the excise tax on cigarettes which were stolen from
it. [607-609]
When it is established that a licensed cigarette wholesaler and stamper
has received certain cigarettes, the burden is on it to prove that it
did not dispose of them by sale with respect to its liability to pay

excise taxes under G. L. c. 64C, § 6.  [609-611]
A licensed cigarette wholesaler and stamper was liable for the excise tax under G. L. c. 64C, § 6, for certain missing cigarettes where it failed to prove that the cigarettes had not been sold.  [611]

APPEAL from a decision of the Appellate Tax Board.

*Sheldon Newman* for the taxpayer.

*Paul W. Johnson,* Assistant Attorney General, for the State Tax Commission.

WILKINS, J.   William Rodman & Sons, Inc. (Rodman), is engaged in the wholesale tobacco business and is both a licensed cigarette wholesaler (G. L. c. 64C, §§ 1, 2) and a stamper (G. L. c. 64C, §§ 1, 30). During the period from May 1, 1971, through May 31, 1972, 358 cases of cigarettes were stolen from Rodman. The disposition during that period of an even greater number of cigarettes acquired by Rodman "is unaccounted for." The Commissioner of Corporations and Taxation (Commissioner) assessed an excise on all these cigarettes, and the State Tax Commission (commission) denied Rodman's abatement application. On Rodman's appeal to the Appellate Tax Board (board), the board considered the appeal on a statement of agreed facts and certain documents and concluded that Rodman was not liable for an excise on those cigarettes which were stolen but that it was liable for an excise on those cigarettes whose disposition was unaccounted for. Rodman and the commission have both appealed from those parts of the board's decision which are adverse to them. We conclude that the board was correct and affirm its decision.

1. The board concluded that the excise was not payable with respect to stolen cigarettes because, as to a licensed wholesaler, the excise is imposed on cigarettes that are "sold." See G. L. c. 64C, § 6, as amended through St. 1971, c. 245, § 1.[1] We think it is clear that the excise is not

---

[1] The question of liability for an excise on stolen cigarettes has arisen in other States with varying results. The answer is clear where the statute explicitly includes as a "sale" the loss of cigarettes by theft or any other unaccountable loss. *Calvert* v. *Zanes-Ewalt Warehouse, Inc.,* 502 S.W.2d 689 (Tex. 1973), appeal dismissed, 416 U.S. 923 (1974). Cf. *Hoffman Import & Distrib. Co.* v. *Director, Div. of Taxation,* 146 N.J.

imposed simply on the possession of cigarettes for sale.[2] The tax imposed by § 6 in 1971 and 1972 was a direct tax on the retail consumer, although collected first at an earlier stage in the distribution process. *Harvey Payne, Inc.* v. *Slate Co.,* 345 Mass. 488, 492 (1963).[3]

The commission argues, however, that Rodman was liable as a stamper for the excise under G. L. c. 64C, §§ 29 and 30, as to the stolen cigarettes. Section 30, as amended by St. 1969, c. 361, § 3, provides in part that "[e]very stamper shall purchase cigarette excise stamps from the commissioner and shall affix them, in the manner and within the time prescribed by the commission, to each package of cigarettes *to be sold* within the commonwealth ... before such cigarettes are offered for sale or otherwise disposed of" (emphasis supplied). The commission contends that this language makes each stamper liable for an excise on any cigarettes he possesses in the Commonwealth for resale. We do not read § 30 as changing the taxable event from the sale of cigarettes to the possession of cigarettes for resale. Section 30 deals with the method and manner of payment of the excise. There is no indication that Rodman as a stamper had an obligation to affix stamps to the cigarettes which were stolen from it.[4]

Super. 132 (1977) (liquor tax). Otherwise, the answer has depended on whether the tax is based on actual sales (*Butler & Kennamer Wholesale Co.* v. *State,* 293 Ala. 216 [1974] [not taxable]), or merely on the holding or possession of cigarettes for sale (*Lewiston-Auburn United Grocers, Inc.* v. *Johnson,* 253 A.2d 338 [Me. 1969]; *N. Tilli & Sons* v. *Commonwealth,* 420 Pa. 28 [1966]; *Daniels Tobacco Co.* v. *Tax Adm'r,* 114 R.I. 502 [1975] [taxable]).

[2] Compare the burden under § 6 on an unclassified acquirer, as defined in G. L. c. 64C, § 1, who must pay an excise on cigarettes *held* for sale or consumption. This legislative distinction should not be ignored.

[3] General Laws c. 64C, § 6, was amended substantially by St. 1976, c. 415, § 55. The provision in former § 6 that all cigarette taxes are "a direct tax on the retail consumer" was deleted.

[4] There is nothing before us to show that the Commissioner had prescribed any specific time for affixing stamps to cigarette packages. "The Resident Stamper's Monthly Tax Stamp and Cigarette Report" (monthly report) in use during the relevant months indicated that a stamper could sell unstamped cigarettes (1) to agencies of the Federal government, (2) outside Massachusetts, and (3) even within the State.

If the Legislature had intended to shift the incidence for the excise from the sale of cigarettes to their possession for resale, it could have done so explicitly. We agree with the board's conclusion that the addition in 1966 of statutory provisions concerning stampers (see St. 1966, c. 435, § 5) did not make this change by indirection. See, especially, G. L. c. 64C, § 39, inserted by St. 1966, c. 435, § 5, which disavows any intention to affect other provisions of G. L. c. 64C.

2. We turn then to Rodman's liability for an excise on those cigarettes for which it could not account. The board concluded that Rodman was liable for the excise for the reason that it failed to "keep a complete and accurate record of all cigarettes . . . purchased or otherwise acquired" (see G. L. c. 64C, § 5) and to "file with the commissioner, on a form prescribed by him, a return . . . stating the number of cigarettes sold" (see G. L. c. 64C, § 6) during the relevant months. The record does not show that Rodman failed to comply with the record keeping requirements of § 5, but it does show that, in filing its monthly reports during the relevant period, Rodman failed to state the number of taxable cigarettes sold in Massachusetts. As far as appears, Rodman made no attempt either to explain its failure to complete its monthly reports or to disclose to the Commissioner that cigarettes were leaving its possession in unauthorized ways. In February, 1973, the acting chief of the Bureau of Excises wrote to Rodman stating that its reports filed for the period from May 1, 1971, through May 31, 1972, were insufficient or incorrect, and requiring the filing of corrected reports. The parties agree that Rodman has not filed any corrected or additional reports.

The rationale for the board's decision that Rodman was not entitled to an abatement for missing cigarettes is internally inconsistent. The board allowed an abatement as to stolen cigarettes. Thus, the board must not have concluded that the maintenance of records and the filing of proper returns were conditions precedent to any grant of an abatement.

We cannot accept Rodman's claim that the missing cigarettes must have been stolen. The board could not reasonably have drawn such an inference from the parties' agreement that the missing cigarettes are unaccounted for. Because Rodman sold most of the cigarettes it received, an inference that the missing cigarettes were sold is at least as fully warranted as an inference that they were stolen.

Although the board's explanation of its decision is unconvincing, the board did focus on essential facts in the record which do justify its decision. If, on the record, as matter of law, the board was warranted in not granting an abatement as to the missing cigarettes, we may sustain its decision without remanding the proceedings to it. Cf. *Assessors of Boston* v. *Lamson,* 316 Mass. 166, 175 (1944); *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 383 (1937).

Rodman had the burden of proving the facts necessary to justify its claims for abatement. In the circumstances, for two reasons, Rodman had the burden of proving that the missing cigarettes were not sold. One of the reasons derives from certain of Rodman's omissions noted by the board. General Laws c. 64C, § 7, as amended through St. 1957, c. 373, § 1 (and in effect at all times relevant to this case, but since repealed by St. 1976, c. 415, § 107), permitted the Commissioner to determine the amount of the excise due from any person who filed an incomplete return and who, after notice, did not file a correct and sufficient return.[5] Rodman filed no corrected return after due notice, and the Commissioner assessed the excise. Section 7 gave Rodman, and others so assessed, a right to appeal the assessment to the commission and from the commission to the board. This statutory pattern indicates that Rodman had the burden of proving that the Commissioner's assessment of the excise was in error. The neutral circumstance that the missing cigarettes are unaccounted for

---

[5] There is a penalty aspect to this procedure because, once the Commissioner determines the excise due, he may assess it "at not more than double the amount so determined." G. L. c. 64C, § 7.

fails to meet Rodman's burden of persuasion that the cigarettes were not sold, and that, therefore, the Commissioner was wrong.

Quite apart from the implications of the statutory pattern, there is a second reason for placing the burden on Rodman to prove that the cigarettes were disposed of otherwise than by sale. Because Rodman received the missing cigarettes, the burden of proving that those cigarettes were not sold is placed rightly on Rodman. As a matter of sound policy, the burden should be placed on a stamper-wholesaler to prove that cigarettes received by it were not sold. See *Afienko* v. *Harvard Club of Boston*, 365 Mass. 320, 331 (1974); *Knowles* v. *Gilchrist Co.*, 362 Mass. 642, 651 (1972); 9 J. Wigmore, Evidence § 2486, at 275 (3d ed. 1940); McCormick, Evidence § 337, at 788-789 (2d ed. 1972). Proof of the circumstances of the cigarettes' disappearance was more readily available to Rodman, who had a superior opportunity to guard against, detect, investigate, and account for their disappearance than did the Commissioner. In addition, a rule which places the burden on a stamper-wholesaler to account for missing cigarettes serves the worthwhile purpose of encouraging the safekeeping of cigarettes and the maintenance of complete and accurate records. A contrary rule of law, in effect, would exonerate a stamper-wholesaler from accounting for missing cigarettes and would not be in the public interest. We thus conclude that, when it is established that a stamper-wholesaler has received certain cigarettes, the burden is on him to prove that he did not dispose of them by sale.

3. Rodman met its burden of proof with respect to the stolen cigarettes but did not do so with respect to the cigarettes which were unaccounted for.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*